

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No. 18-01319 |
| | Chapter 11 |
| PANIOLO CABLE COMPANY, LLC, | |
| Debtors. | |
| MICHAEL KATZENSTEIN as Chapter 11 Trustee, | Adv. Pro. No. 21-90004 |
| | Dkt. 103 |
| Plaintiff, | |
| vs. | |
| CLEARCOM, INC., | |
| Defendant. | |

1

## MEMORANDUM OF DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff David Farmer, Plan Agent under the confirmed chapter 11 plan and successor in interest to chapter 11 Trustee Michael Katzenstein ("the Trustee"), seeks partial summary judgment on two counts of his complaint against Clearcom, Inc. ("Clearcom"). Under count I, the Trustee contends he is entitled to $6,443,036.78 in breach of contract damages. Under count II, the Trustee asserts that Clearcom was unjustly enriched by $1,273,203, and Clearcom should pay that amount in restitution to the Trustee. In total, the Trustee is seeking $7,716,239.78 in damages. In the alternative to count I, the Trustee is seeking $6,234,925.33 in restitution for unjust enrichment.

The court held a hearing on the motion on November 3, 2023. Jonathan Bolton and Matthew Ezer represented the Trustee, and Addison Bonner represented Clearcom.

For the reasons set out below, I will grant the Trustee's second motion for partial summary judgment and award the Trustee $7,716,239.78 in damages.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 2 of 31

## I.     BACKGROUND

### a.  The Hee Companies and License 372

This case involves a group of affiliated companies. Albert Hee and trusts benefitting his family own Waimana Enterprises, Inc. ("Waimana"). Waimana owns Sandwich Island Communications, Inc. ("SIC"), Pa Makani LLC ("Pa Makani"), Clearcom, Inc. ("Clearcom"), and Paniolo Cable Company ("Paniolo"). Case No. 18-01319, ECF 855 at 9.[1] The State of Hawai'i Department of Hawaiian Home Lands ("DHHL") administers about 200,000 acres of land across the island of Hawai'i for the benefit of native Hawaiians. *Id.* at 6..[2] As of 2019, about 36,500 people lived on the Hawaiian Home Lands. State of Hawaii Data Book 2020 at table 1.17. In 1995, DHHL granted License 372 to Waimana. Case No. 18-01319, ECF 855 at 7. License 372 gave Waimana the exclusive right to "build, construct, repair, maintain, and operate a broadband telecommunications network . . . over, across, under and

---

[1] Dkt. 855 filed in the main bankruptcy case is an opinion of the district court affirming certain orders of this court. The opinion is also found at *Sandwich Isles Commc'ns, Inc. v. Hawaiian Telcom, Inc.*, Civil No. 22-00426 JAO-KJM, 2023 WL 6378626 (D. Haw. Sept. 29, 2023).

[2] *See generally Arakaki v. Lingle*, 477 F.3d 1048, 1054-55 (9th Cir. 2007) (discussing history of the Hawaiian Home Lands).

3

throughout all lands under [DHHL's] administration and jurisdiction . . . ." *Id*. at 7-8; Case No. 18-01319, ECF 639-1 at 3.

Waimana split the rights under License 372 with three of its affiliates. In 1996, Waimana assigned to SIC "those certain rights, title, and interest necessary to provide Intralata and Intrastate telecommunications services . . . ." Case No. 18-01319, ECF 639-2 at 3. In 2011, Waimana assigned to Pa Makani the rights necessary to "provide wireless communications services of all types . . . ." Case No. 18-01319, ECF 639-3 at 2. Finally, in 2014, Waimana assigned to Clearcom the right to "provide broadband services of all types . . . ." Case No. 18-01319, ECF 639-4 at 2.

In the meantime, SIC built the infrastructure necessary to fulfill License 372. From 1997 to 2001, SIC borrowed more than $160 million from an agency of the federal government to fund the construction. Case No. 18-01319, ECF 673 at 5 (describing the government's loans); Case No. 18-01319, ECF 347-2 at 2 (describing the assets).

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 4 of 31

Paniolo built a submarine cable system ("the Paniolo Assets") that carried telecommunication services between islands.[3] Case No. 19-90022, ECF 22-1, at 4-5. Deutsche Bank ("Deutsche") lent Paniolo about $150 million to finance the construction. Case No. 18-01319, ECF 1 at 3.

In 2007, Paniolo and SIC entered into two agreements that allowed them to connect SIC's terrestrial system with Paniolo's submarine system and direct traffic between their systems. The first agreement was a Joint Use Agreement ("JUA"). Case No. 19-90022, ECF 22-1, at 5-6, which allowed Paniolo to connect to SIC's terrestrial assets. Case No. 18-01319, ECF 347-4 at 2. The second agreement was the Paniolo Cable Network Lease ("SIC Lease"). No. 18-01319, ECF 18-1 at 383. Under the SIC Lease, SIC would make payments to Paniolo in exchange for access to the Paniolo Assets. Case No. 18-01319, ECF 18-1 at 385.

### b. The FCC Funding Changes

Because only a small number of people lived on the Hawaiian Home Lands, SIC could not generate enough income from customer charges to pay

---

[3] Paniolo engaged Clearcom to build the Paniolo Assets. Case No. 18-01319, ECF 349-4 at 1.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 5 of 31

its operating expenses, including its lease payments to Paniolo, and service its massive debt.[4] To cover the shortfall, SIC relied on large subsidies from the Federal Communication Commission's ("FCC") Universal Service Fund ("USF"). *See* Case No. 19-90022, ECF 22-1, at 4. SIC expected to receive $14,000 per line per year from the USF. *Id.* These subsidies were also crucial to Paniolo, because SIC used this money to pay its obligations under the SIC Lease. *Id.* SIC's lease payments comprised Paniolo's only source of income to pay the obligations on its secured loans. *Id.* at 6-7.

In 2011, the FCC dramatically altered the way it administered the entire USF. *United States v. Sandwich Isles Commc'ns, Inc.*, 398 F. Supp. 3d 757, 766 (D. Haw. 2019). Beginning in July 2014, it reduced SIC's yearly payments from $14,000 to $250 per line. *Id.* In 2013, SIC applied for a waiver to continue receiving the higher compensation rates from the USF, but the FCC denied this request in May 2013. *Id.* As a result, SIC reduced its debt payments to the United States and made only irregular payments to Paniolo. *Id.* at 767.

---

[4] To recapitulate, SIC and Paniolo spent about $310 million combined to build systems that served only about 36,500 customers.

6

By December 2014, SIC had completely stopped paying Paniolo. Case No. 18-01319, ECF 17, at 6. Consequently, Paniolo stopped paying its debt to Deutsche. *Id.*

### c. Paniolo's Bankruptcy

In late 2018, successors in interest to Deutsche ("Paniolo Creditors")[5] filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code against Paniolo. *Id.* Although Paniolo initially resisted the bankruptcy, the Paniolo Creditors and Paniolo agreed to the entry of a chapter 11 order for relief and the appointment of a chapter 11 Trustee. Case No. 18-01319, ECF 48.

### d. The Trustee's Settlement

In 2020, the bankruptcy court approved a settlement ("2020 Settlement") between the Paniolo Creditors, the Trustee, Waimana, SIC, Clearcom, and other entities controlled by Waimana.[6] ECF 47-6 at 2.[7] One

---

[5] This group includes HSBC Securities (USA) Inc., Sunrise Partnership Limited Partnership, and Deutsche Bank Trust Company Americas.

[6] The Waimana-controlled entities, including Clearcom, Pa Makani LLC, and Ho'Opa'a Insurance Corp., are sometimes referred to below in reference to the Settlement as the "SIC Parties." ECF 47-6 at 2.

[7] All ECF references from this point forward are to Case No. 21-90004 unless otherwise stated.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 7 of 31

purpose of the 2020 Settlement was to clarify the relationship of all parties to the Paniolo Assets. To this end, the Trustee and SIC terminated the JUA and SIC Lease and replaced them with the Master Relationship Agreement ("MRA"). ECF 47-6 at 2. Under the 2020 Settlement and the MRA, only SIC (and not any of its affiliates) had the right of access to the Paniolo Assets, and SIC's access was limited to two fiber pairs to provide service only to customers on the Hawaiian Home Lands. ECF 82-2 at 3-4. The purpose of these limitations was to make it easier for the Trustee to sell the Paniolo Assets. Armed with a court-approved settlement, a buyer could ascertain the capacity of the system in excess of SIC's use rights. *Id.*; *see also* ECF 47=3 at 3-4; ECF 86 at. Confirming this purpose, SIC, Waimana, and Clearcom warranted that:

> Except as set forth in Exhibit 2 hereto, the SIC Parties hereby represent and warrant to the other parties that there are **no agreements of any nature** (including without limitation, grants of Indefeasible Rights of Use (IRUs), wholesale contracts, or commercial agreements) **permitting persons or entities other than SIC** to use capacity on the [Paniolo Assets] other than the two pairs of fiber reserved to SIC for the purposes stated herein.

ECF 47-6 at 7-8 (emphasis added). The 2020 Settlement also states:

8

> **SIC shall have no right to assign or sublease any of its interest** in the Initially Leased Fiber **except to the Ownership**[8] and only for the purposes of providing retail services to end users on Hawaiian Home Lands.

ECF 47-6 at 3 (emphasis added).

### e. The 2021 Adversary Proceeding

In February 2021, the Trustee filed an adversary proceeding against Clearcom. ECF 1. The Trustee brought three counts against Clearcom: Breach of contract, unjust enrichment, and turnover. *Id.* at 6-8. In the first count, the Trustee alleged that Clearcom breached the 2020 Settlement by allowing Time Warner Entertainment Co. L.P. and its affiliates ("Charter") to use capacity on the Paniolo Assets. *Id.* at 6-7. In the second count, the Trustee argued that Clearcom was unjustly enriched from the alleged contracts existing between Clearcom and the third parties. *Id.* at 6. The third count claimed that all money Clearcom received under these wrongful contracts should be turned over to Paniolo's bankruptcy estate. *Id.* at 7-8. Clearcom denied the Trustee's allegations. ECF 4.

---

[8] According to the 2020 Settlement, "Ownership" is defined as Waimana, SIC, Clearcom, Pa Makani LLC, and Ho'Opa'a Insurance Corp.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 9 of 31

### f.  The Trustee's First Motion for Partial Summary Judgment

In February 2023, the Trustee moved for partial summary judgment on the issue of liability for counts I and II. ECF 47. Two agreements formed the basis for the Trustee's first motion for partial summary judgment.

First, the Trustee claimed Clearcom breached the warranties in the 2020 Settlement because it had made an agreement with Charter in late 2019 that permitted Charter to use capacity on the Paniolo Assets ("2019 Agreement). ECF 47-1 at 5-6. The Trustee offered an email exchange between Al Hee, Wendy Hee, and Tim Davis as evidence of the purported agreement. ECF 47-7. On October 28, 2019, Charter experienced an outage that cut off their service to Kauai. *Id.* at 4. and Mr. Davis emailed Ms. Hee to ask if there were any opportunities to "bring up connectivity quickly on the Paniolo assets." Four hours later, Mr. Davis added Mr. Hee to the email chain and asked if there were "options on the Paniolo route." *Id.* at 3. Around the close of business that day, Mr. Davis stated that he wanted to "purchase 8x10G on a month-to-month term." *Id.* at 2. The next day, Mr. Davis thanked the Hees for helping Charter restore service to its customers so quickly. *Id.* The

10

Trustee also provided a service order signed by Wendy Hee on October 31, 2019. ECF 47-8. The service order listed Charter as the customer for "8 – 10G circuits" for a term of 30 days for $120,000. *Id.* The listed addresses on the service order were "SIC Nanakuli CO, Oahu, HI" and "SIC Kekaha CO, Kauai, HI." *Id.* The Trustee also presented a February 2022 invoice from Clearcom billing Charter for Intrastate provider charges in the amount of $120,000. ECF 47-9.

Second, the Trustee claimed that Clearcom breached the 2020 Settlement by allowing Charter to use the Paniolo Assets in 2021 through an "Internet and Video Service Rights and Data Purchase Agreement" ("2021 Agreement"). ECF 47-1 at 6. The only parties to this agreement are Charter and Clearcom. ECF 47-11 at 1. In the recitals, the parties stated that Charter has been leasing "Licensed Infrastructure" from SIC under a 2006 agreement.[9] *Id.* The parties stated that the bankruptcy court is garnishing SIC and they desire a new arrangement going forward to furnish data services

---

[9] The 2021 Agreement refers to this agreement as the Cable Services Agreement II. Clearcom stated in its interrogatories that Cable Services Agreement II related to the use of the Paniolo Assets. ECF 47-12 at 8.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed 01/16/24   Page 11 of 31

to customers residing in the HHL. *Id.* The Trustee then pointed out that Clearcom stated in discovery that the 2021 Agreement "relat[ed] to, refer[ed] to, the use of, or access to, the Paniolo [Assets]." ECF 47-12 at 3.

Clearcom denied breaching the 2020 Settlement. ECF 52 at 5. Clearcom argued that its role was "simply to allow Charter to use Clearcom's License to provide data across the [HHL]." *Id.* Clearcom stated that it performed this action at the request of SIC and did not utilize the Paniolo Assets. *Id.* Clearcom also argued that SIC allowed Clearcom to "use facilities accessible to SIC on an emergency basis to facilitate Charter's restoration of services to Kauai in October 2019." *Id.* According to Clearcom, the 2020 Settlement was never breached because "Clearcom's role did not involve granting Charter access to the Paniolo [Assets]." *Id.* Clearcom also disputed the unjust enrichment claim on the basis that it had remitted all money received from Charter to SIC. *Id.* 5-6. Because Clearcom had not retained any funds, Clearcom could not have been unjustly enriched. *Id.* at 6. Clearcom also argued that it was not subject to the bankruptcy court's jurisdiction. *Id.* at 3.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 12 of 31

This court held a hearing on the Trustee's first motion for partial summary judgment on March 6, 2023. ECF 58. The bankruptcy court made an oral ruling in favor of the Trustee and made three decisions: the bankruptcy court had subject matter jurisdiction and personal jurisdiction over Clearcom; Clearcom breached the 2020 Settlement by allowing Charter to use the Paniolo Assets; and Clearcom was unjustly enriched even if it remitted to SIC all the funds it received from Charter. ECF 59. Clearcom filed a motion for leave to appeal, which the BAP denied. ECF 80 at 1.

### g. The Trustee's Second Motion for Partial Summary Judgment

The Trustee filed a second motion for partial summary judgment on two issues. ECF 82 at 3. First, the Trustee asked the court to rule that an additional agreement between Clearcom and Charter, the Master Services Agreement ("MSA"), violated Section 8 of the 2020 Settlement. ECF 82-1 at 7-8. Second, the Trustee asked the court to find that Clearcom is liable for $9,197,554.23 in damages. *Id.* at 8.

The Trustee asserted that the MSA was Clearcom and Charter's overarching agreement concerning the Paniolo Assets. *Id.* at 14. The Trustee

13

claims that under the MSA, Charter could rent capacity on the Paniolo Assets by submitting Access Service Requests ("ASRs"). *Id.* at 13. The Trustee alleges Clearcom confirmed ASRs with Firm Order Confirmations ("FOCs"). *Id.* The Trustee argued the MSA is still currently in operation and offered the deposition testimony of a Charter officer as evidence. ECF 82-4 at 3. He stated that the MSA was in effect as of September 2023. *Id.* at 4. He also stated that the 2019 Agreement was part of the MSA. *Id.* The Trustee offered spreadsheets obtained from Charter, corroborated by a Charter officer's deposition testimony, showing amounts Charter paid Clearcom under the MSA, the 2019 Agreement, and the 2021 Agreement. ECF 82-7; ECF 82-4 at 5-8.

The Trustee asserted that Clearcom is liable for $9,197,554.23 in total damages. ECF 82-1 at 17. The Trustee contended that Clearcom received $1,481,314.45 prior to 2020 Settlement under the MSA and 2019 Agreement. *Id.* at 23. The Trustee alleged Clearcom received $6,443,036.78 from Charter after the 2020 Settlement. *Id.* The Trustee claimed $7,924,351.23 total for breach of contract under count I. *Id.* The Trustee asserted $1,273,203 in count

14

II's unjust enrichment claim for money received under the 2021 Agreement. *Id.* at 26-27.

Clearcom continued to deny liability for breaching the 2020 Settlement. ECF 85. Clearcom argued that it "did not have any capacity of its own on the Paniolo Network to lease to anyone." *Id.* at 7. According to Clearcom, it acted as an intermediary between SIC and Charter: SIC "agreed to provide a portion of its capacity to Clearcom in exchange for the amount of the fee Charter paid to Clearcom for such access, provided Charter also provided capacity to SIC to bypass [a] break." *Id.* at 7-8. Clearcom asserted that "SIC had apparent authority to use the Paniolo Cable Network, and to permit Clearcom to use that access to assist SIC in fulfilling its obligation to operate and maintain the Paniolo network." *Id.* at 8. According to Clearcom, it "did not have any capacity on the Paniolo Network to lease and could not have done so without SIC." *Id.*

Clearcom also renewed its defense that it was not unjustly enriched because it was only a conduit for payments from Charter to SIC. *Id.* at 9. Clearcom also claimed that it was "not compensated for its efforts or use of

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 15 of 31

its license and paid taxes for receipt of the funds before transferring the pretax amounts to SIC." *Id.* Clearcom contended that it was made "poorer," and therefore could not have been unjustly enriched. *Id.* at 9.

Clearcom also argued that it had other agreements with Charter, and Clearcom receives money from those agreements as well. *Id.* at 10. Although Clearcom receives some money from Charter for accessing SIC's capacity on the Paniolo assets, Clearcom asserted that the Trustee did not adequately demonstrate that all the money Clearcom received from Charter was related to the Paniolo Assets. *Id.*

Clearcom continued to dispute the bankruptcy court's jurisdiction on several different grounds. *Id.* at 10-11.

### h. The Errata and Surreply

Prior to the hearing on the second motion for partial summary judgment, counsel for the Trustee filed errata to previous filings. ECF 89. The errata stated that the Trustee's alleged damages were incorrect due to a double-counting error. *Id.* at 2. Consequently, the Trustee amended all filings to reduce the total claimed damages from $9,197,554.23 to $7,716,239.78. ECF 89 at 2; *see also* ECF 90-93. The Trustee revised Count I's breach of contract damages from $7,924,351.23 to $6,443,036.78. ECF 91 at 22. The Trustee continued to claim $1,273,203 under Count II's unjust enrichment theory. ECF 91 at 26-27.

At the hearing, Clearcom asked the court for a continuance and leave to file a surreply addressing the new damage calculation. ECF 94. The court granted leave to file a surreply limited to addressing the altered damage calculations. ECF 96.

Contrary to the court's direction, Clearcom's surreply reargued previous factual contentions and raised new arguments. For the first time, Clearcom argued that the MSA expired when Clearcom agreed to the 2020

17

Settlement, that the 2019 Agreement only lasted for a month, and that the 2021 agreement did not involve the Paniolo Assets. ECF 100. Clearcom concluded that the Trustee's damages calculations were indeed wrong, not because the Trustee made a counting error, but because Clearcom did not breach the 2020 Settlement at all. *Id.* at 3-5. Clearcom also took the position that unjust enrichment was the incorrect remedy because any relief should be obtained through a claim for breach of the 2020 Settlement. *Id.* at 6-7.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the nonmovant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 9th Cir. 2002). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portion of the record . . . that it believes demonstrate the absence of a genuine issue of

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 18 of 31

material fact. *Celotex*, 477 U.S. at 323. If the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and to show (1) the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law[,]" and (2) that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). While the court may not weigh the credibility of witnesses, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A party may not create a "genuine" issue of fact by filing a declaration that contradicts the witness' prior deposition testimony. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Allowing later declarations to contradict initial evidence would "diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 19 of 31

(quoting *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

### III. Discussion

#### a. This Court has Personal and Subject Matter Jurisdiction Over Clearcom.

Clearcom denies that it is subject to this court's jurisdiction. *See* ECF 52 at 3; ECF 85 at 10-11. Clearcom is wrong.

#### 1. Personal Jurisdiction

Clearcom has waived its right to contest personal jurisdiction. The failure to timely object to personal jurisdiction constitutes a waiver of that objection. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982). Clearcom did not deny personal jurisdiction of this court in its answer under FRCP 12(b)(2) or by any or appropriate motion under FRCP 12(h)(1). *See* ECF 4. Both as a matter of law, and by admission, Clearcom is subject to this court's personal jurisdiction.

#### 2. Subject Matter Jurisdiction

This court has subject matter jurisdiction over Clearcom. Subject matter jurisdiction is the court's statutory authority to adjudicate a case. *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Objections to subject matter jurisdiction cannot be waived or forfeited and can be raised at any point in the litigation. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Congress has authorized bankruptcy courts to (among other things) adjudicate civil proceedings "related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). The bankruptcy court's "related to" jurisdiction reaches post-confirmation matters that impact the execution of the plan. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). In *Pegasus*, a mining company in bankruptcy reached an agreement with the State of Montana regarding certain reclamation issues impacting the mining company's financial responsibilities. *Id.* at 1192. The bankruptcy court later confirmed the mining company's plan. *Id.* Prior to confirmation, the bankruptcy court approved a settlement agreement between the parties. *Id.* Montana terminated the agreement a short time later after a series of billing disputes. *Id.* The mining company brought state law contract claims and an unjust enrichment claim for breaching the "Master Agreement," signed after confirmation. *Id.* Although these were state law claims raised post-confirmation, the Ninth

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed 01/16/24   Page 21 of 31

Circuit held that they had a "sufficiently 'close nexus' to the bankruptcy proceeding." *Id.* The Ninth Circuit reached this conclusion in part because the claim and remedies sought would impact the "implementation and execution of the Plan itself[.]"

*Pegasus* illustrates that this court has subject matter jurisdiction over the Trustee's claims. The Court approved the 2020 Settlement two years before it confirmed the plan in Paniolo's bankruptcy case. *See* Case No. 18-01319, ECF 271 (order approving the 2020 Settlement) and ECF 606 (order confirming the plan). Clearcom admits that the 2020 Settlement was intended to ensure that the Paniolo Assets' eventual purchaser would have exclusive control of those assets. ECF 86 at 2. The Trustee alleges that Clearcom has earned money from the use of the Paniolo Assets in violation of the 2020 Settlement. ECF 1 at 6-8. Like the agreement in *Pegasus*, Clearcom's alleged violations have an exceedingly close nexus with Paniolo's bankruptcy. The 2020 Settlement, forged in the midst of the bankruptcy process with an eye towards liquidation, is crucial to implementing the plan. Interpreting and enforcing the MRA is related to

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed 01/16/24   Page 22 of 31

Paniolo's bankruptcy, and this court has subject matter jurisdiction over the Trustee's claims.

Clearcom's jurisdictional grievances are not persuasive. *See* ECF 85 at 11. Clearcom provides a litany of "questions and issues" that "must be answered before the Plaintiff can assert jurisdiction of the bankruptcy court." ECF 85 at 11. Among these "questions and issues," Clearcom states that "Clearcom does not have a contractual relationship to Paniolo," "the reorganization plan did not include the [MRA]," and "Clearcom's involvement in assisting Charter and SIC ended prior to the confirmation and the reorganization plan." Clearcom has a contractual duty to Paniolo's bankruptcy estate under the 2020 Settlement. Case No. 21-90004, ECF 47-6 at 7-8. Clearcom's obligations to Paniolo exist even though the plan did not specifically state those obligations. Finally, based on the Charter officer's uncontradicted deposition testimony, Charter and Clearcom have been contractually involved through at least September 2023, a year after the plan was confirmed. Clearcom's subject matter jurisdiction claims are not grounded in law or fact.

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 23 of 31

In summary, this court has personal jurisdiction and subject matter jurisdiction.

### b. Clearcom Breached the 2020 Settlement Agreement.

To establish a breach of contract claim, a plaintiff must demonstrate: "(1) a contract (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to plaintiff." *Hawaii State Fed. Credit Union v. Kahapea*, 497 P.3d 1103 at *3 n.7 (Haw. Ct. App. 2021).[10]

There is no dispute about the first two elements. Clearcom does not dispute that the 2020 Settlement exists and that Clearcom is a party to it. Clearcom does not contend that the Trustee breached the 2020 Settlement.

Clearcom denies that it breached the agreement, but it is wrong. Section 8 of the 2020 Settlement provides that "…[Clearcom] hereby represent[s] and warrant[s]…that there are no agreements of any nature…permitting persons or entities other than SIC to use capacity on the

---

[10] The 2020 Settlement states that it is governed by New York Law. ECF 47-6 at 10. But the parties have cited only Hawaiʻi law. This means either that they have waived the choice of law provision, or they implicitly agree that New York and Hawaiʻi law on this topic are identical. *See C.N.R. Atkin v. Smith*, 137 F.3d 1169, 1170 (9th Cir. 1998).

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed 01/16/24   Page 24 of 31

[Paniolo Assets]. ECF 47-6 at 7-8. Additionally, "SIC shall have no right to assign or sublease any of its interest in the [Paniolo Assets] except to the Ownership and only for the purposes of providing retail services to end users on Hawaiian Home Lands." ECF 47-6 at 4. The Trustee correctly argues that Clearcom entered into three agreements with Charter that on their face violated these provisions.

Clearcom's attempt to avoid responsibility for its breach makes no sense. It seems to claim that it did not breach the 2020 Settlement because, when it entered into the agreements with Charter, it was merely acting on behalf of its affiliate, SIC. According to Clearcom, its role was "simply to allow Charter to use Clearcom's License to provide data across the [HHL]" by "us[ing] facilities accessible to SIC on an emergency basis to facilitate Charter's restoration of services to Kauai in October 2019" but "did not involve granting Charter access to the Paniolo [Assets]." ECF 52 at 5. The facts remain, however, that (1) Clearcom represented that it did not have, and it agreed that it would not make, any agreements allowing anyone to use the Paniolo Assets (with very limited exceptions that are not applicable

25

to Charter), (2) nevertheless Clearcom made agreements with Charter that allowed Charter to use the Paniolo Assets, and (3) Charter collected money from Charter under those agreements. Clearcom's excuses do not add up. Clearcom relies on declarations from members of the Hee family. Those declarations are inconsistent with contemporaneous communications between Charter and Clearcom, as well as Clearcom's earlier documents produced under oath. No reasonable jury could accept those declarations and rule in favor of Clearcom.

### 1. The MSA

Clearcom offered two reasons why the MSA did not breach the 2020 Settlement. First, Clearcom argued that the MSA was not active when Clearcom entered into the Settlement. Second, Clearcom contends that the Trustee offered no proof that the MSA related to the Paniolo Assets. Clearcom says that it has other agreements with Charter, and the Trustee has not shown that the payments cited by the Trustee relate to the use of the Paniolo Assets. ECF 85 at 10. These contentions do not create a genuine issue of fact.

First, Clearcom admitted in its responses to the Trustee's discovery requests that the MSA relates to the Paniolo Assets. ECF 47-12 at 3. The Trustee asked Clearcom to disclose all agreements that relate to the Paniolo Assets. Clearcom stated that the MSA relates to the use of access of the Paniolo Assets.

Second, Charter admitted that the MSA was in effect through late 2023. ECF 82-4 at 7. Charter's officer testified at his deposition that as of September 11, 2023, the MSA was still in effect and that Charter was still making payments to Clearcom under the MSA. ECF 82-4 at 4, 7. The officer also stated that the 2019 Agreement was part of the MSA. ECF 82-4 at 4. Emails between Mr. Davis, Mr. Hee, and Ms. Hee in the run up to the 2019 Agreement state explicitly that the Paniolo Assets are the assets Charter wanted to use. ECF 47-7 at 4. The service order even states that Charter is using SIC's assets from Kekaha, Kauai, to Nanakuli, Oahu. ECF 47-8. It would be impossible to connect these two points without submarine cable because they are located on two different islands, and only Paniolo had a

27

submarine cable system. No reasonable jury would accept Clearcom's argument that some of the payments did not relate to the Paniolo Assets.

### 2. The 2019 Agreement

Clearcom argued that the 2019 Agreement lasted one month and had expired by the time Clearcom entered into the 2020 Settlement. ECF 100 at 4. No reasonable jury would agree. Charter's officer testified that the 2019 Agreement was part of the MSA. ECF 82-4 at 4. Charter's records reflect monthly payments to Clearcom of $120,000 from October 2019 through March 2022. *See generally* ECF 82-7; *see also* ECF 82-4 at 6-7. Clearcom received payments under the 2019 Agreement for approximately two years after it agreed in the 2020 Settlement that no third parties had access to the Paniolo Assets.

### 3. The 2021 Agreement

Clearcom argued again that this Agreement does not relate to the Paniolo Assets, so this agreement could not have breached the 2020 Settlement. ECF 100 at 4. Again, Clearcom's position contradicts its own prior admissions. Clearcom admitted in its responses to its interrogatories

that the 2021 Agreement relates to the use of the Paniolo Assets. ECF 47-12 at 3. The recitals in the 2021 Agreement also state that Charter was paying Clearcom to use the Paniolo Assets.

SIC and Charter had a previous agreement for "Licensed Infrastructure" in 2006, the Cable Services II Agreement, but that agreement expired in 2007. ECF 47-11 at 2. By Clearcom's own admission in the interrogatory responses, the Cable Services II Agreement related to use of the Paniolo Assets. ECF 47-12 at 3. Thus, the 2021 Agreement is an extension of a 2006 agreement between Charter and Clearcom to license capacity on the Paniolo Assets.[11] Clearcom states in the 2021 Agreement that it holds exclusive rights to use capacity on the Licensed Infrastructure through the entire term of the agreement. ECF 47-11 at 2.

Clearcom is liable for breaching the 2020 Settlement because of its participation in the MSA, the 2019 Agreement, and the 2021 Agreement.

---

[11] The 2021 Agreement was intended to circumvent the garnishment order this court issued to Charter. The recitals state that Charter has been paying SIC for use of the Licensed Infrastructure since 2007, but Charter is subject to a garnishment order and Clearcom and Charter desire a "new, go-forward only arrangement." Charter recited that it will comply with the garnishment order, but the Agreement only purports to require it to pay Clearcom for using the Paniolo Assets. *See generally* ECF 47-11.

29

### c. Clearcom is liable to the Trustee for $7,716,239.78.

The Trustee claims $6,443,036.78 in damages for breach of contract and $1,273,203 for unjust enrichment. ECF 91 at 22. Clearcom denies that it has any liability to the Trustee but does not challenge the Trustee's damages calculation.

The court agrees with the amount of damages that the Trustee seeks, although not necessarily with the Trustee's theory of damages. Clearcom represented that it had no contracts with anyone, and would not make any contracts with anyone, for use of the Paniolo Assets. Nevertheless, Clearcom made contracts with Charter under which Charter used the Paniolo Assets, and Clearcom collected money from Charter under those contracts. It would be unjust to allow Clearcom to retain payments it received for the use of assets that the Trustee, and not Clearcom, owned. Therefore, the Trustee is entitled, under principles of unjust enrichment and restitution, to recover all money that Charter paid to Clearcom, because the Trustee's right to that money is superior to Clearcom's. *In re Cuzco Dev. U.S.A., LLC*, 592 B.R. 352, 367 (Bankr. D. Haw. 2018) (holding that, under

30

principles of restitution, wrongdoers should not benefit from their wrongdoing); *Lumford v. Yoshio Ota*, 434 P.3d 1215, 22 (Haw. Ct. App. 2018)) (holding that, to prevail on an unjust enrichment claim, the plaintiff need only demonstrate that the plaintiff has a superior claim to the property relative to the defendant.).

## IV. Conclusion

Based upon the foregoing, the Trustee's second motion for partial summary judgment for damages based on breach of contract and unjust enrichment in the amount of $7,716,239.78 is GRANTED.

This ruling disposes of counts I and II but does not dispose of count III. The court will hold a status conference at 10:00 a.m. on March 1, 2024, to discuss the disposition of the remainder of this case.

**END OF MEMORANDUM OF DECISION**

U.S. Bankruptcy Court - Hawaii   #21-90004   Dkt # 103   Filed  01/16/24   Page 31 of 31